Defendant's name is Michael J. Selby, and we are here with the defendant of Appalachia, Keith Bryant. Mr. Selby. Thank you, Your Honor.  This case really is about the integrity of the corollary next arbitration system. It really is a very good system. It's a system that we may know was implemented in the mid to late 1980s. But it is wholly reliant upon the diligent efforts of the litigants and their lawyers. The Supreme Court rules, the comments, and the local rules emphasize the need for attorney diligence with respect especially to discovery. I mentioned in my brief, Supreme Court Rule 89 and 91, and worth special mention, I think, are the committee comments. I won't quote them in total, but it emphasizes the necessity for early, very thorough discovery. There's a premium on diligence. And the overriding theme of these committee comments and the rules themselves is that the parties not use arbitration for the purposes of obtaining discovery. For if that happens, the integrity of the system is in jeopardy. It means that the arbitration panelists, the clerks, the lawyers, really is put to waste for the purposes of conducting the arbitration hearing. But here we're reviewing the trial court's decision to deny the plaintiff's motion in limine seeking to bar a doctor in Berman's testimony, correct? No, it's not just that, Justice Inhofe. It's also the original order that was granted that allowed late disclosure of an expert, the disclosure of an expert post-arbitration. So you're saying we're reviewing that order issued by the arbitration judge? It was, yes, by the arbitration judge. That's what you indicate we should be reviewing here? Yes. And how and why is that? What is there? This case went to trial, right? It did. I'm sorry. No, that's right. And the trial court denied the plaintiff's motion for a new trial. The plaintiff appealed. Well, that was just the beginning of the process, if I may, Justice. Sure. Originally what happened is there was a post-arbitration motion where after we went through the arbitration process, then the arbitration took place. And then after the arbitration, after the defense lost the case, they said, we want to disclose an expert. And then the arbitration judge granted them leave to do that. We filed a motion to reconsider. That was denied. Then when it got to trial, we filed a motion to eliminate. That was denied. And then ultimately our motion for a new trial was also denied. That was on the motion for a new trial. The basis for that motion was the original granting or allowance of this late discovery. Our standard review is abuse of discretion, correct? I don't think so. Why not? Because in this particular case, the motion that sought leave to make late disclosure on its face did not have sufficient facts to grant such leave. It was not a good cause. We don't have a transcript of those proceedings, do we? We do not have a transcript of those proceedings, but we do have the very motion that set forth the basis. Whose burden is it to produce a transcript, a complete, full and complete record? Well, I think that if the short answer is that the appellant does, if the transcript, if there is a factual inquiry on which the transcript might defy. But in this particular case, Justice, I would submit that even if you took the allegations contained within the motion that sought leave to make late disclosure, even if you assume that to be true, as a matter of law, those facts were not a basis to allow late disclosure. For example, that motion stated that the reason they wanted to make late disclosure of this particular expert was that the plaintiff had not signed authorizations for them to obtain medical records. But I would point out, first of all, that there's no record that would support that. That's not true. But even assuming arguendo that it was true, there's no obligation on the part of the plaintiff to offer such authorization. The remedy, the routine, literally routine remedy for the defense if they want to obtain medical records is to do a routine HIPAA motion to get the plaintiff's medical records. But in this case, not only can't the plaintiff or defense attorney can't request authorizations to sign off authorizations, they can't do that? Oh, no, they can't do that. Let me, let me. Sure. I don't want to interrupt you, but your time is limited. Ours is limited as well. You say in your reply brief that the allegation that the plaintiff failed to cooperate in signing authorizations for medical records is misleading at best. Correct. At argument on the motion for a new trial, Mr. Mueller stated, Judge, I can't pronounce it, Judge Fortestrass? Yes. Reasoned that because plaintiff failed to cooperate in executing authorizations in part contributed to the defendant's late disclosure, therefore finding good cause. You did not rebut that explanation. You didn't complain further about that. You didn't rebut that. And that's what's in the record. Well, I would, I would, I would submit, though, that his merely stating that conclusion. As an officer of the court, if you had information to contest that, wouldn't it have been your obligation to bring it forward so the court could make the correct ruling and grant your motion? Well, I don't think that it would be an obligation. I would say that if I were to do it again, that I would address it verbally and say, well, Judge. That's not what happened. No. You're saying here that's not true, but your opportunity to say that wasn't a chalkboard. But, Judge, his stating those facts in the argument does not make those facts part of the record. If you want to look at what the facts are that are part of the record. You just told me that the facts were unconconverted. So, therefore, as a matter of law, you're entitled to relief. And now you're saying that there were facts, but we're not supposed to regard those facts. So, can you tell me which argument you want to make or do you want to make them in the alternative? Which is, if it's just a question of law because the facts are uncontested, we have to address the merits of that or as well as contesting the facts. In which case, explain why you shouldn't be fouched. Well, I think that it really comes down to what is contained in the motion seeking relief. That motion stated, the motion seeking relief stated that the reason they needed time to make late disclosure was because we had not signed authorizations so they could get medical records. My response says that we gave them the medical records, they already had them, and we had no obligation to execute the authorization. And so, by virtue of those facts containing the pleadings, I would assert that as a matter of law, the facts in the case really – I see Justice Burkett's point about it not being contested and your point in that respect. And I also concede that in that respect, my earlier statement was wrong. But I would say that the fact that Mr. Wheeler said that in an oral argument in the post-trial motion does not make those facts so. What makes those facts so, or not, is the allegations that are contained in the motion and the response to the motion. And I would point this out too, and this is extremely important, it just came to mind. You will recall that there was a motion to compel filed about contemporaneously with the motion seeking leaves to disclose this late expert. That motion to compel also stated that we had not signed these authorizations. That was the basis for the motion to compel us to sign the authorization. That motion was denied. But then the court allowed the late disclosure and said, on the record, you can depose this expert in fairness, correct? And that addresses the prejudice issue, Judge, which I would like to address. I want to make one other point, though, before I get to the prejudice, with your permission. The whole theme behind the Supreme Court rules are don't use the arbitration for discovery. Because if you do that, it breaks down the integrity of the system. What happened in this case, and this is uncontested, they did not do any discovery. We did all the, we answered discovery, we propounded discovery, we did everything we were supposed to do. They never answered discovery. They disclosed no witnesses before arbitration. They did not take the plaintiff's deposition. Then when the arbitration takes place, they walk in with a court report. They then examine the plaintiff. They cross-examine the plaintiff. And ultimately, the record shows this, too. They take their transcript after the arbitration, they lose the arbitration, and they give their transcript to an expert. This is the quintessential case of a party using the arbitration for discovery. But Judge Vorderstrasse, I think it is, made a decision in that particular, with respect to those, that motion, right, and the reply to the motion. Why is not Judge Vorderstrasse's decision the law of the case for the trial court and a proper basis on which they denied the motion to bar the testimony? I think that that's an excellent question, Justice Inhofe. And I think that that may be a basis for the court to find that Judge Foos was not an heir in granting the new trial. It may be a reason why he was not an heir in granting the motion to eliminate, because it was the law of the case. But the law of the case by the time the case got to him was the wrong law of the case. It was based on an erroneous decision that originated with Judge Vorderstrasse. So you're saying we can go behind that and revisit that decision that was made by the arbitration judge? Absolutely, as long as I have not waived the argument. And I did not waive the argument because I, well, nobody's argued that I waived it, but had there been an argument, I would have said to defense counsel that I brought a motion to reconsider. I brought a motion to eliminate. I brought a motion for a new trial. And I objected at the time that the doctor testified. So every step of the way, I objected to maintain the record for what I saw as the original heir by Judge Vorderstrasse. Your argument about using the arbitration proceeding for discovery, how is it being used for discovery when what you're doing is taking the transcript of the plaintiff's testimony and just giving it to an expert to look at? Yeah, that's a fair question. Doesn't it happen a lot in personal injury cases? That's a great question, and here's the answer. The answer is no. That the only time it's used, I can't say the only time in the history of the state of Illinois, the only time I've ever seen the transcript of the arbitration used to go to an expert is this time. Now, routinely, the discovery deposition of the plaintiff is taken where the discovery deposition, the defense lawyer asks about the mechanism of the injury. How did you hurt yourself? How did your body move? And then they take that transcript, and they take it to the expert, and the expert reads the transcript and says, well, this accident couldn't have caused the injury. Instead of doing that traditional way of handling a true discovery, they use the arbitration as discovery. And they're in line. Did the defense counsel ask questions at the arbitration proceeding? Yes. Yes. He did. And I would confess I don't remember the detail with which those questions are, but you'll see that the direct examination and Dr. Ingberman testified, and in her report she says she relied on the arbitration decision for her opinions. Again, this is a case where the defense used the arbitration for discovery. I believe the only two parties that testified at the arbitration hearing were the plaintiff and defendant. There were no experts who testified, either on your behalf or on the defense party. That's true. But in the arbitration hearing pursuant to Supreme Court Rule 90C, we have the right to put in the medical records and the opinions that are contained in those medical records as substantive evidence without calling the actual authors or other people. So were those reports put in? Yes. And what did they establish? They established causation, injury, nature and extent of injury. May I just make one more statement? I could do it. Go ahead. Okay. Justice, I would just assert that this case is not just about the $25,000 difference between the $15,000 verdict and the $40,000 arbitration award. The decision you make in this case really will have implications about how lawyers litigate the arbitration system going forward. If these rules are mere suggestions where, hey, you don't have to disclose your expert, maybe you can do it later, and everybody thinks it's sort of a loose standard, that will adversely affect the arbitration system. I handle these smaller cases a lot. It's important that this system, the integrity of this system, be maintained. It's a good system that is a mechanism for timely resolution of these cases, and in that respect, your decision in this case is very important. I thank you for your time. I have a question before you sit down. Yes. What's your definition of good cause? My definition... Because I don't think I saw it in your brief. Yeah, I think that's fair. I would say that the Supreme Court has expressly said that they refuse, and I think that literally is a word in the Bright case, that they refuse to define it, but they say it's on a case-by-case basis. I would say in this particular case, the only good cause alleged was this issue about not signing authorizations. And I would, you know, I see the problem with what happened at the post-trial motion, but I would assert that that, as a matter of law, is not good cause. Okay. You'll have an opportunity to make rebuttal. Thank you. Thank you. Mr. Ryan, you may proceed. Good afternoon, Your Honors, Counsel. I'd like to start. Appellant's counsel just made reference to the fact that there's a $25,000 difference between arbitration and trial. And one of the main reasons for that difference is, as Appellant's counsel suggested, he was able to submit 175 pages of medical records and bills. These were not produced at trials. There were no witnesses for medical witnesses. When you say trial, you mean at the actual trial? At the actual trial, Appellant did not call any physicians to testify. No bills were submitted. There's the difference between arbitration and trial. Now, Appellant's counsel tries to make this sound like the arbitration process is in danger as a result of our being able to disclose a 213F witness. It wasn't used as a discovery process. The committee comments to Rule 89 states specifically there was little use of depositions to prepare for arbitrations. Interrogatories are the preferred method of taking of the discovery prior to arbitration. Interrogatories were submitted to the plaintiff. Interrogatories were received by the defendant. So the fact that they didn't take the plaintiff's deposition prior to the arbitration and the fact that they then had a court reporter at the arbitration does not mean that Appellee did not take the arbitration process seriously. Most importantly, as Appellant's attorney seems to gloss over, is the standard of review. This court has said, and many Illinois courts have said, discovery orders are reviewed for abuse of discretion standard. Appellant's reliance on Norskog is misplaced. If there's uncontroverted facts, for facts uncontroversial and the issue before the court is an application of the law to the facts, then de novo standard of review is used. It's not quite what Norskog says or what this court should do. It's based upon the question that was before the trial court. And the question before the trial court in Norskog was about mental records privilege and its progeny cases. It was all about privilege. There's no privilege here because the plaintiff put her physical condition in issue. Right. But more importantly, the question before the court was whether good cause was shown in order for Appellee to disclose an expert after the discovery cutoff. And as counsel said, the Illinois line of cases, bright and vision point, says that there's no definition of good cause. It is specifically, vision point says, it's a fact-determining, I mean, a fact-dependent determination. Therefore, the determination is based upon facts, which, therefore, an abuse of discretion standard is warranted and not a de novo. What's your response to his claim that the only fact is what you put in your plea? It's not just the primary fact is what was in the pleading, but additional facts were what was heard at hearing. Unfortunately, we don't have a transcript of the original ruling on the motion to decide. Or bystanders report? There was a four bystanders report. There's not one. So, but the point is, obviously, Judge Vorderstras found good cause. She put in the order that plaintiff's arguments regarding closure, discovery, and no good cause were heard. She then was presented with those arguments on the motion to reconsider. So she listened to them again and still ruled that, obviously, there was good cause shown in order for this late disclosure. Then again, Judge Fuse had a chance to visit this issue. And he didn't just say he was required to follow the law. On page 18 of the reporting proceedings, R18, he says additionally. The law of the case? I'm sorry? The law of the case? Is that what you mean? He does say the law of the case, but he also says he believes it was proper. So he isn't just saying that it was the law of the case. He obviously seems to be approving of Judge Vorderstras's determination of good cause. There's no evidence that Judge Vorderstras abused her discretion. This Court itself has held in Control Solution v. Alexis that abuse of discretion standard is the most deferential standard. In fact, this Court said it's next to no review at all. And here there's no arbitrary or fanciful decision finding that there's good cause. What's the implication of allowing the rejection and having the arbitration officers state on the record that this was a meaningful arbitration proceeding, taken in good faith? Thank you, Your Honor. I was going to get to that as well. I'm prescient. I don't know if I ever told you that. I once was going to have a relationship with a girlfriend, but my prescience indicated that we weren't going to get along. So I just cut it off before we ever met. I wish I had that prescience in my past. But anyway, that isn't part of my response. Again, the appellate attorney keeps saying that we didn't take the arbitration process seriously. The time to bring that up was to debar our rejection, which likely would have been denied, as Your Honor so eloquently states. Appellee was found in good faith at the arbitration hearing. So therefore, obviously, the arbitrators themselves who were right there on the scene found that we took the arbitration process seriously. And again, Appellant even says that the whole point of this appeal is that Appellee ignored the arbitration process. I thought the whole point of the appeal was that the trial court abused their discretion in allowing Appellee to disclose a 213F, three witness, after discovery had closed. And there was no abuse of discretion in finding that. The judge found it was good cause. Four times this issue was raised. I don't see how the finding of good cause could be held to be arbitrary or fanciful. They took it very seriously by looking at this two separate judges on four occasions. Therefore, I do not think that this court should overrule the trial court and grant a new trial for Appellant. Can I answer any other questions?  Mr. Salvi. I would just submit this. If they took the arbitration seriously, and these are all matters of record, why did they not answer interrogatories before arbitration? Why did they not answer the requests that were produced before arbitration? Which interrogatories are you referring to? The interrogatories that plaintiff propounded upon the defense. And we propounded a request to produce that was never responded to. They never deposed the plaintiff. And listen to this. This is in the record. They made a motion, a motion we did not object to, to continue the arbitration to conduct discovery. That motion was granted. After that motion was granted, they conducted no discovery. They did their discovery at the arbitration hearing. I assume this was pointed out to the judges on at least one occasion? It was, yes. So we would find it in a transcript somewhere? I think you would find it in my response to the motion to compel and or my response to the motion for leave and my motion for a new trial and in my motion eliminating. I should say and or. It may be in all of those. It may be in one or some. And with regard to the prejudice issue under that, the bright case that I cited, because counsel mentioned, well, they didn't call these witnesses at trial. That's a prejudice argument. And the Supreme Court has said that the prejudice in inquiry, the prejudice inquiry inappropriately places the burden on the party requesting admission to show why a late filing should not be allowed. In our case, it was whether or not there was good cause for a late filing of a response to a request to admit. So we don't have to show prejudice. We just have to show that there was not good cause. Thank you. Thank you. Court's adjourned. Cases will be decided in an expeditious manner.